FILED'08 FEB 25 13:40USDC-ORM

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CONNIE M. PERRAULT,                                    CV 07-055 CL

Plaintiff,

v.                                    REPORT AND RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

CLARKE,  Magistrate Judge:

## INTRODUCTION

Plaintiff  Connie M. Perrault brings this action pursuant to the Social Security Act, 42

U.S.C. § 405(g) ("the Act"), to obtain judicial review of a final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying her claim for disability insurance

benefits.  For the reasons set forth below, the decision of the Commissioner should be remanded

for the payment of benefits.

/ / /

1 - REPORT AND RECOMMENDATION

## PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits on October 19, 1999, alleging disability since March 1, 1999, due to depression, anxiety, and anemia. Tr. 129. Her application was denied and there was no appeal.

On January 15, 2002, plaintiff filed this application for disability insurance benefits, alleging disability commencing March 1, 1999. This application was denied initially and upon reconsideration. On May 10, 2004, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated July 27, 2004, the ALJ found plaintiff was not entitled to benefits. The Appeals Council granted review on September 17, 2005, and remanded this matter so that the ALJ could consider new and material evidence, give further consideration to treating and examining source opinions, and evaluate plaintiff's credibility. In addition, the ALJ on remand was to obtain evidence from a medical expert, conduct further proceedings to determine whether drug addiction or alcoholism were contributing factors material to the finding of disability, and, if appropriate, obtain additional testimony from a VE. Tr. 90-91.

A new hearing was held on January 23, 2006. In a decision dated March 11, 2006, the ALJ found that, considering the effects of drug and alcohol abuse, plaintiff's impairments met the requirements for listings 12.04, 12.06, 12.08, and 12.09, and that she was disabled. However, the ALJ found that, absent the effects of drug or alcohol abuse, plaintiff was able to perform other work existing in the national economy and was therefore not entitled to benefits. Tr. 31. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the Commissioner's decision. The medical records

in this case accurately set out plaintiff's medical history as it relates to her claim for benefits.  The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## PLAINTIFF'S TESTIMONY

At the May 2004 hearing plaintiff testified that she was disabled by depression and mental instability.  Tr. 887.  She testified that she was unable "to commit to anything," that she had short-term memory loss, and secluded herself at home.  *Id.* She had a tendency to carve on herself and was suicidal and homicidal.  Plaintiff stated that she became ill or fell asleep before she could finish drinking a beer due to her medication.  Tr. 889-90.  Sometimes she is unable to do anything, including watching television, and she simply tries to breathe.  Tr. 890. She feels disappointed with herself and carves on her arms and then drips hot wax on the wounds.  Tr. 891.  Plaintiff testified that she need not be drinking to self-mutilate .  *Id.*  She quit drinking in May 2003.

At the January 2006 hearing plaintiff testified that she has memory problems.  She stated that prior to 2001, she drank alcohol to intoxication two to three times per week, but since that time she drank only sporadically.  Tr. 817.  She overdosed on alcohol once in 2004[1], but that had not occurred again.  Plaintiff testified that her medications cause her to fall asleep after one drink. Tr. 818.  She routinely takes her medication, and continues to be depressed "most of the time." Tr. 821.  She becomes intensely depressed when her neighbors bother her, "at least five times" a month.  Tr. 822.  The intense depression can last a whole day or a couple of hours, and during

---

[1]The record indicates that this actually occurred in February 2002.  Tr. 574.

3 - REPORT AND RECOMMENDATION

those times she stays in bed and cries.  Her neighbors play loud music day and night and use a

high pitched sound that is irritating.  Tr. 822.  Plaintiff testified that she can hear them talking at

night about hating her because she is a lesbian.  Tr. 823.  This occurs "usually every night."  Tr.

824.  During the day, she uses music or television to drown out the noise.  She is not comfortable

outside because she feels like her neighbors are watching her, even though she lives on six acres.

*Id.*

Plaintiff testified that she contemplates suicide at least once a month.  She plays Russian

roulette with her guns. Tr. 825.  She no longer self-mutilates.  She hears people talking about her,

loud music, and people running through her yard even though she cannot see them or record the

noise.  Tr. 829.   Plaintiff stated that when she is less depressed she attempts to do housework.

She makes plans but does not always carry them out.  Tr. 853.  She has no friends and engages in

no social activities.  She has sleep problems, difficulty concentrating, and feels threatened by her

neighbors.

The ALJ found that plaintiff's statements as to the intensity, duration, and limiting effects

of her symptoms were "not entirely credible that her limitations are not related to substance

abuse."  Tr. 25.

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) failing to credit the opinions of treating and

examining physicians; (2) improperly rejecting lay testimony; (3) finding her not fully credible;

(4) finding that drug abuse was material to a finding of disability; and (5) posing an inadequate

hypothetical question to the vocational expert ("VE").  Because the first two assertions are

dispositive, the court need not address the others.

4 - REPORT AND RECOMMENDATION

I. Treating and Examining Providers

    A. Katie Tihanyi, M.D.

    Dr. Tihanyi has treated plaintiff since 1996.  She has managed her care on a regular basis,

often monthly, and treats her for psychiatric and medical issues including diabetes,

hypothyroidism, hyperlipidemia, and sleep disorder.  On March 21, 2005, Dr. Tihanyi wrote:

> While this patient had significant issues with alcohol abuse in
> the past which aggravated her psychiatric and medical problems,
> she has been relatively abstinent of alcohol since January 2003
> and was probably only abusive of alcohol occasionally through
> the years of 2001 and especially, 2002.
>
> [Plaintiff] has a very longstanding history of psychiatric problems
> which no doubt were aggravated by alcohol use in the past, but
> she has not had significant alcohol or drug abuse for some years,
> yet continues with serious psychiatric issues which have
> rendered her unable to work for some years.
>
> For at least 3 years or so the patient has been describing to me
> noises at night including gunshots sounding out, loud talking,
> and suspicion that her neighbors are talking about her and are
> menacing her, and she has generally felt unsafe at night for
> some years.  During almost every visit in the last few years,
> the patient has talked about her difficulty with sleep because
> of hearing menacing sounds at night which she attributes to a
> neighbor....Any attempts to validate her claims have been un-
> successful.  I asked her to tape some of these loud nighttime
> conversations and bring them in for me to validate or present to
> Sara DuVal her mental health worker.  When [plaintiff] did take
> a tape to Sara DuVal, Ms. DuVal was unable to hear any conver-
> sation whatsoever.  At one point I thought she might not be
> delusionary, had her fitted with custom earplugs but she continued
> to have the same complaints relentlessly thereafter.  I also suggested
> she use white noise to cover up the sound, but this was totally
> unsuccessful.

/ / /
/ / /
/ / /

> For some time now I have been of the belief that the patient is
> having auditory hallucinations and is likely psychotic....I believe
> her thinking is delusional at times and her thinking skills are
> severely impaired.  This has been reinforced by her behavior at
> our visits which continue on a monthly basis.  In fact I think
> her delusional behavior is worsening despite the fact that she is
> no longer abusing alcohol.
> ...
> I do not believe this patient has the cognitive or social skills to
> hold down a job and I do not think she has had these skills for
> some years.  She is unable to concentrate sufficiently; her memory
> is poor, and she has difficulty organizing her thoughts and her
> plans.  She would be unable to work independently, would be un-
> able to interact appropriately with the public or colleagues and
> would have difficulty understanding and completing even simple
> tasks.  I also do not think she could conform to socially appropriate
> behavior at a job site.  I consider this patient to be severely dis-
> abled based on her psychiatric problems, and I believe her psychiatric
> problems have not improved as she has cut back and stopped
> drinking alcohol.

Tr. 696-97.

The ALJ gave Dr. Tihanyi's opinion "little weight." Tr. 29.  The ALJ said that the record

as a whole suggested that plaintiff has consistently understated her alcohol use.  The ALJ noted

that Dr. Tihanyi's records indicate that plaintiff had one glass of wine on January 1, 2005.  Tr.

701.  Dr. Tihanyi noted, but the ALJ did not, that plaintiff reported that the wine made her ill. *Id.*

The ALJ noted that plaintiff was intoxicated when arrested in January 2005.  Plaintiff testified

that she had overdosed on alcohol that day, and that it had not happened since.  Tr. 818.

The ALJ stated that Dr. Tihanyi's opinion that plaintiff was becoming more delusional

was contradicted by the records of Sarah DuVal, R.N., M.N., P.M.H.N.P. Tr. 737-39.  The ALJ's

statement is not legitimate. Each of the cited records are of office appointments, of twenty

minutes duration, for the purpose of checking on medications. In March 2005, Ms. DuVal

reported that plaintiff was feeling more in control of her moods, though she was "severely challenged by a 3 day garage sale for her father in the company of her brother. Is thinking more of carving on her arms and is having more problems controlling that." Tr. 738. Plaintiff reported concerns regarding "people she doesn't know or recognize." *Id.* Ms. DuVal recommended that plaintiff's medications (Abilify, Zoloft, Seroquel, Sonota) be refilled.

In May 2005, plaintiff reported that she was carving on her arms less because it hurt. Ms. DuVal noted that this indicated improvement. Tr. 739. Ms. DuVal recorded "challenges with low mood and sustained motivation," and that plaintiff continued by to be "plagued by her 'neighbors,'" though it seemed less intense than it had been. *Id.* The dose of Abilify, an antipsychotic medication, was doubled.

In August 2005, plaintiff reported that the increase in Abilify had been helpful, and that she was doing better at ignoring her neighbors. Tr. 737. Medications were continued unchanged. Ms. DuVal's records do not contradict Dr. Tihanyi's opinion that plaintiff was becoming more delusional. To the contrary, they document that only two months after Dr. Tihanyi's opinion was articulated, Ms. DuVal recommended doubling the plaintiff's dose of Abilify.

Finally, the ALJ notes that Dr. Tihanyi's opinion is not signed by her. Her opinion is typed on three pages of Primary Care West, P.C. letterhead, with Dr. Tihanyi's name on the front page, and signed "Dawn Andrews for Katie Tihanyi, MD." Tr. 698. Standard secretarial notation indicates that it was dictated by KET and typed by HS. There is no evidence that this document does not contain Dr. Tihanyi's opinion and that she did not personally sign it is not a substantial or legitimate reason to discredit her opinions.

7 - REPORT AND RECOMMENDATION

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 1202, citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR 404.1527. *Id.* citing SSR 96-2p. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id.* § 404.1527(d)(1)-(2). An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

Here, the ALJ gave "greater weight" to the opinion of Sally Clayton, Ph.D., a licensed clinical psychologist. Tr. 29. Dr. Clayton has expertise in chemical dependency treatment, and reviewed the medical record and observed plaintiff's testimony at the January 2006 hearing. Dr. Clayton testified that plaintiff met the criteria for a diagnosis of personality disorder, substance addiction, mood disorder, and anxiety disorder. Tr. 856. However, Dr. Clayton opined that there was inconsistency in the record about plaintiff's alcohol abuse, and that without the effect of alcohol abuse plaintiff would be mildly limited in her activities of daily living, moderately impaired in social functioning, and moderately to markedly impaired in concentration,

persistence and pace. Tr. 857. The ALJ concluded that Dr. Clayton opined that plaintiff's mental impairment would not prevent her from working if she stopped drinking. Tr. 29.

Plaintiff argues that Dr. Clayton's opinion is not "substantial evidence" to contradict Dr. Tihanyi, citing *Orn v. Astrue,* 495 F3d 625 (9th Cir 2007). The *Orn* court held that the opinion of an examining physician, if based upon the same clinical findings and diagnoses as that of a treating physician, and differing only in the conclusions reached, are not "substantial evidence." *Orn,* 495 F3d at 632. Assuming, without deciding, that the opinion of a reviewing physician can constitute substantial evidence to contradict the opinion of a treating physician, when, as here, the reviewing physician's opinion is based upon the same clinical findings and diagnoses as that of the treating physician, the ALJ may not reject the treating physician's opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record. *Reddick,* 157 F3d at 725 (quoting *Murray v. Heckler,* 722 F2d 499, 502 (9th Cir 1983).

The ALJ did not provide 'specific and legitimate reasons' to reject Dr. Tihanyi's opinion, particularly when Dr. Tihanyi had treated plaintiff, often monthly, for more than nine years. Dr. Tihanyi's opinion is entitled to controlling weight. *Holohan,* 246 F3d at 1202.

B. Susan I. Means, Ph.D.

Dr. Means treated plaintiff monthly from April 2001, through March 12, 2002. In April 2001, Dr. Means assessed a Global Assessment of Functioning ("GAF") of 50.[2] Tr. 439. She

---

[2]    2 The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)). It is essentially a scale of zero to 100 in which the clinician

completed a Mental Status Report on March 12, 2002, in which she opined that plaintiff "would

be unable to complete a normal work pace at the present time. She would tend to lose

concentration if pressured to complete a task....I feel at the present time that [plaintiff] would not

be able to handle a work situation in which she had to make quick judgments. She would tend to

become aggressive if feeling at all threatened...." Tr. 437.

The ALJ noted Dr. Means's reports, misstated the GAF rating as 52, and gave it "some

weight, but the claimant was actually consuming alcohol at the time." Tr. 22. The ALJ cited the

April 17, 2001 chart note of Dr. Tihanyi, in which she notes that plaintiff "is not abstinent." Tr.

543.

Dr. Means's notes a history of alcohol abuse, but does not address in her treatment notes

whether or not plaintiff is drinking and to what extent her symptoms arise from alcohol abuse.

The ALJ properly notes that Dr. Means's reports are an accurate assessment of plaintiff's ability

to function while abusing alcohol, and are consistent with the rest of the record. Tr. 23. The ALJ

properly articulated specific and legitimate reasons to discount Dr. Means's opinion as to

plaintiff's limitations without the effect of alcohol abuse.

C. Paul S. Stoltzfus, Psy.D.

Dr. Stoltzfus performed a psychological evaluation of plaintiff in March 2004. Tr. 691-

---

considers "psychological, social, and occupational functioning on a hypothetical continuum of
mental health-illness," not including impairments in functioning due to physical or environmental
limitations. *Id* at 34. A GAF score between 41 and 50 indicates "Serious symptoms (e.g.
suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in
social, occupational or school functioning (e.g., no friends, unable to keep a job)." *Id* at 32.

95. In addition to a clinical interview, Dr. Stoltzfus examined Sarah DuVal's records from

November 2001 to February 2004, and administered the Beck Depression Inventory and the

Million Clinical Multiaxial Inventory-III. Plaintiff reported that she drank a beer or two a week

for the past nine months. Dr. Stoltzfus diagnosed Bipolar II Disorder with current major

depressive symptoms with psychotic features; Dysthymic Disorder; Somatization Disorder; Post-

Traumatic Stress Disorder and Obsessive Compulsive Disorder by history; Schizoid Personality

Disorder with self defeating and borderline personality disorder traits. He assessed a GAF score

of 40.

      Dr. Stoltzfus commented:

> Despite the client's over reporting of symptoms, she does appear to be
> genuinely disorganized psychologically, severely depressed and de-
> lusional. She is currently being treated for Bipolar II disorder and during
> the time of the current evaluation she was in a severe depressive episode.
> She has difficulty thinking rationally and certainly her response to her
> neighbors is maladaptive, appears delusional and is probably part of the
> psychotic features. She is very upset by neighbors, whom she states she
> has never seen and consequently she is staying indoors, where she con-
> tinues to hear high pitched noises, which she has no doubt are being
> broadcast by her neighbors to her day and night....She is having difficulty
> functioning effectively on a day-to-day basis and does not appear capable
> of entering competitive employment at this time. She is medication com-
> pliant but she is quite socially isolated appears unable to form meaningful
> or supportive relationships. Her prognosis is poor and her condition is
> considered chronic.

Tr. 695. Dr. Stoltzfus evaluated plaintiff again on May 19, 2005, following plaintiff's arrest for

filing a false police report about hearing gunshots. Plaintiff reported drinking wine with dinner

several times a month, but not drinking to intoxication. Dr. Stoltzfus administered the same

11 - REPORT AND RECOMMENDATION

tests, with similar results. Tr. 723-27.  He concluded:

> The client continues to experience considerable emotional distress,
> perceived problems wand harassment from her neighbors continue
> and she is using psychotropic medications to deal with her problems.
> No significant mood swings were reported.  While depressed, the
> severity of depression appears to have decreased considerable, as in-
> dicated on the Million and the BDI.  She has improved and stabilized
> somewhat over the past year with medication.
>
> She now faces legal charges related to calling the police on her neigh-
> bors.  The severity of her problems with her neighbors is perhaps worse
> than a year ago.  She resents being arrested and fully believes her neigh-
> bors are harassing.  Given the high degree of paranoia and delusional
> ideation regarding her neighbors, it is not advisable for her to have access
> to guns.
>
> Personality characteristics remain stable and negative traits include social
> avoidance, unusual thought patterns, pessimistic outlook, self defeating
> behaviors and borderline personality traits.  She needs ongoing medication
> management and would benefit from regular counseling for at least eight
> to 12 months.  As noted a year ago, her prognosis continues to be poor,
> at last in terms of personality characteristics.  Medications have decreased
> severity of depressive symptoms.  Fortunately, she has been able to abstain
> from alcohol and drugs for the past four years.

Tr. 727-28.

The ALJ summarized Dr. Stoltzfus's opinion, but stated that the opinion that plaintiff was

unable to sustain employment was given little weight. Tr. 28.  The ALJ noted that despite

plaintiff's admitted history of drug and alcohol abuse, Dr. Stoltzfus did not diagnose alcohol

abuse.  It is possible that Dr. Stoltzfus did not consider drinking alcohol several times a month,

not to intoxication, alcohol abuse.

The Commissioner argues that the ALJ rejected Dr. Stoltzfus's opinion as based on

plaintiff's not credible reports. This assertion is not supported by the record.

An ALJ may reject the uncontradicted opinion of an examining psychologist only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester v. Chater,* 81 F3d 821, 830 (9th Cir 1995). The opinion of an examining psychologist, even if contradicted by another psychologist, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Id,* citing *Andrews v. Shalala,* 53 F3d 1035, 1043 (9th Cir 1995). Dr. Stoltzfus knew of plaintiff's drug and alcohol history, and his assessment of plaintiff's use at the time of his reports is corroborated by treating physician Tihanyi. His failure to diagnose alcohol abuse is not a specific and legitimate reason to discredit his opinions. The ALJ's determination that Dr. Stoltzfus's opinion was entitled to little weight is not supported by substantial evidence.

II. <u>Lay Witnesses</u>

A. Sarah DuVal, PMHNP

Sarah DuVal was plaintiff's psychiatric nurse practitioner from February 2002 through at least August 2005. She saw plaintiff about once a month. In March 2005, Nurse DuVal filled out a Mental Residual Functional Capacity ("MRFC") report in which she opined that plaintiff had marked limitations in: (1) the ability to maintain a schedule and regular attendance and be punctual within customary tolerances; (2) the ability to work in coordination with or proximity to others without being distracted by them; (3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods; (4) the ability to

interact appropriately with the general public; (5) the ability to get along with coworkers or peers

without distracting them or exhibiting behavioral extremes; (6) the ability to accept instructions

and to respond appropriately to criticism from supervisors; and (7) the ability to respond

appropriately to changes in the work setting. In addition, Ms. DuVal reported that plaintiff

would be moderately limited in her ability to: (1) understand and remember detailed

instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for

extended periods; (4) sustain an ordinary routine without special supervision; (5) ask simple

questions or request assistance; (6) maintain socially appropriate behavior and to adhere to basic

standards of neatness and cleanliness; (7) be aware of normal hazards and take appropriate

precautions; (8) travel in unfamiliar places or use public transportation; and (9) set realistic goals

or make plans independently of others. Tr. 713-15. Ms. DuVal stated that these limitations

existed since she began plaintiff's care in February 2002.

     The ALJ summarized Ms. DuVal's opinion and accorded it little weight "as inconsistent

with her treatment notes which reveal the claimant is typically described as oriented, displaying

good eye contact and appropriate dress, and euthymic." Tr. 29. That plaintiff was oriented, made

eye contact and was dressed appropriately does not conflict with any of the limitations noted by

Ms. DuVal. "Euthymic" is a general term used to describe a bipolar patient who is not currently

in a manic or depressive phase. Am J Psychiatry 164:638-646, April 2007. That plaintiff was

euthymic does not conflict with any of the limitations identified by Ms. DuVal.

14 - REPORT AND RECOMMENDATION

The ALJ stated that Ms. DuVal's treatment notes included reports of increasing paranoia in February 2005, improving thereafter. August 2005 notes reported significant improvement with a medication change, and that plaintiff was working on a rebuilding project on her property. Plaintiff reported "doing better at ignoring her rowdie neighbors." Tr. 29. As set out above, plaintiff's antipsychotic medication was doubled in May 2005, on Ms. DuVal's recommendation, resulting in the improvement cited by the ALJ. Improvements in plaintiff's condition that occurred in August 2005 do not render Ms. DuVal's March 2005 evaluation not credible.

Finally, the ALJ notes that, as a psychiatric nurse practitioner, Ms. DuVal is not considered an acceptable medical source by the Social Security Administration. Although a nurse practitioner is not an "acceptable medical source," 20 CFR § 404.1513(a)(3), she is an "other source" to be considered under the regulations. At a minimum, an ALJ should treat a nurse practitioner's opinion with as much consideration as a lay witness and give reasons supported by substantial evidence for rejecting it. *Vincent on behalf of Vincent v. Heckler,* 739 F2d 1393, 1395 (9th Cir 1984). The ALJ failed to articulate specific and legitimate or clear and convincing reasons to reject Ms. DuVal's opinion. That failure constitutes error.

B. Ms. Valerio

By letter dated October 25, 2005, Theresa Valerio, LCSW, wrote that she had seen plaintiff for counseling in nine sessions commencing July 20, 2005. Tr. 740. Ms. Valerio noted the diagnosis of Bipolar II Disorder with major depressive symptoms current with psychotic features, and stated:

15 - REPORT AND RECOMMENDATION

> [Plaintiff's] symptoms cause clinically significant impairment
> in her social and occupational functioning. [Plaintiff] presents
> with anxiety, depression, paranoia, difficulty sleeping at night,
> difficulty concentrating, suicidal ideation, isolating behaviors,
> and a lack of social relationships with others.
>
> Treatment priority is currently decreasing suicidal thoughts and
> maintaining a stable mood. Further expectations for work would
> greatly jeopardize this goal.

*Id.*

The ALJ noted Ms. Valerio's opinion, and said that "greater weight has been given to the opinion of Dr. Clayton given at the most recent hearing that the structure of a work setting would be helpful to the claimant and would not cause her mental condition to become worse." Tr. 30. Given the overwhelming weight of the evidence from treating and examining providers regarding plaintiff's inability to maintain employment, the ALJ's reliance on Dr. Clayton's opinion does not constitute legitimate, substantial evidence to contradict Ms. Valerio's opinion. The ALJ's rejection of Ms. Valerio's opinion was error.

III.  Remand For Payment of Benefits is Appropriate

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.), *cert. denied,* 531 U.S. 1038 (2000); *Benecke v. Barnhart,* No. 03-15155, 2004 WL 1770096 (9th Cir. Aug. 9, 2004). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not

sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th

Cir. 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should

be credited and an immediate award of benefits directed." *Harman v. Apfel,* 211 F.3d at 1178.

The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for
> rejecting such evidence, (2) there are no outstanding issues
> that must be resolved before a determination of disability can
> be made, and (3) it is clear from the record that the ALJ would
> be required to find the claimant disabled were such evidence
> credited. *Id*

The second and third prongs of the test often merge into a single question:  Whether the

ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at

1178 n.2.

The ALJ improperly rejected the testimony of  Drs. Tihanyi and Stoltzfus, Nurse DuVal,

and Ms. Valerio as to plaintiff's mental limitations.  Given that plaintiff clearly established that

she can no longer perform her past relevant work, Tr. 31, this case turns on whether the

Commissioner has met his burden at step five of proving that plaintiff retains the ability to

perform other work in the national economy, eight hours a day, five days a week.

At the January 2006 hearing, the VE testified that a hypothetical person with a limited

tolerance for public, coworker, and supervisor interaction would be able to work as a file clerk,

housekeeper, and motel housekeeper.  Tr. 867.  The VE testified that such a hypothetical person

with marked limitations in the ability to perform activities within a schedule, maintain regular

17 - REPORT AND RECOMMENDATION

attendance, and be punctual within customary tolerances, and with marked limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, as identified by Ms. DuVal, would be unable to do any of the identified jobs.  Tr. 869.  These limitations are also identified by Dr. Tehanyi and, with less specificity, by Dr. Stoltzfus.  If credited, Drs. Tehanyi, Stoltzfus, and Ms. DuVal's opinions establish that plaintiff is unable to complete a normal workday and compel a finding of disability.  The ALJ rejected medical opinions which, if credited as true, clearly establish that plaintiff is disabled, regardless of the ALJ's finding that plaintiff is not fully credible.  Cf. *Connett v. Barnhart,* 340 F3d 871, 876 (9th Cir 2003).

The only remaining issue is that of the onset date of plaintiff's disability.  Plaintiff alleges disability commencing March 1, 1999.  However, the evidence establishes that drug and alcohol abuse substantially contributed to her disability at that time.  Dr. Tihanyi stated in March 2005 that plaintiff had not abused alcohol since January 2003.  Tr. 696.  Plaintiff attempted suicide on 12/31/02 with alcohol and prescription medications, and was hospitalized for two weeks.  Tr. 649.  She was seen by Dr. Tihanyi on January 22, 2003, and treatment notes from Nurse DuVal and Dr. Tihanyi document sobriety through the rest of 2003.  Tr. 643, 617, 616, 642, 636, 631, 630.  The medical record contains no evidence of alcohol abuse thereafter through the second administrative hearing in January 2006.  There are therefore no outstanding issues.  This matter should be remanded for the payment of benefits effective January 22, 2003.

18 - REPORT AND RECOMMENDATION

## RECOMMENDATION

The ALJ's finding that plaintiff is not disabled is not supported by substantial evidence. For these reasons, the Commissioner's decision should be remanded for payment of benefits consistent with these findings and final judgment should be entered pursuant to Sentence Four of 42 USC 405(g).

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by March 11, 2008. If objections are filed, any responses to the objections are due 14 days after the objections are filed.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

Dated this _25_ day of February, 2008.

_____
MARK D. CLARKE
United States Magistrate Judge

19 - REPORT AND RECOMMENDATION